NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 07a0737n.06
Filed: October 16, 2007

No. 07-5179

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| LESLIE MYATT | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| COMMISSIONER OF SOCIAL SECURITY | ) | EASTERN DISTRICT OF KENTUCKY |
| | ) | |
| Defendant-Appellee. | ) | |

Before: COLE and COOK, Circuit Judges; and FROST, District Judge.[*]

COOK, Circuit Judge. Leslie Myatt appeals the denial of disability insurance benefits to him by the Social Security Administration (SSA), contending that its decision neither complied with the treating source regulation nor was supported by substantial evidence. We disagree with his contentions and affirm.

I

---

[*]The Honorable Gregory L. Frost, United States District Judge for the Southern District of Ohio, sitting by designation.

Myatt, a 56-year-old former insurance agent, filed an application for disability insurance benefits with the SSA in February 2004. After the SSA denied his initial claim for benefits, he appeared before an Administrative Law Judge (ALJ) for a hearing.

At the hearing, the ALJ sifted through competing evidence. Myatt testified that he began experiencing severe anxiety in March 2000, which forced him to stop working. He also testified that he suffers from several debilitating physical ailments, including neck, back, leg, knee, and toe pain; lethargy; high blood pressure; and fecal incontinence. In support of his claims, Myatt submitted medical records from his treating physician, Dr. Ray Kleykamp, including a letter opining that Myatt "is unable to work." Other medical evidence included a "Treatment/Service Plan" from Pathways, Incorporated, where Myatt received therapy from a social worker, diagnosing Myatt with "Major Depressive Disorder, Recurrent, [without] Psychotic features" and "Post Traumatic Stress Disorder."

The ALJ also reviewed evidence generated by the SSA during the application process, including reports from two examining doctors. The first, by psychiatrist Kevin Eggerman, concluded that Myatt suffered from anxiety that moderately limited his ability to interact with others and to "respond appropriately to work pressures in a usual work setting." Two non-examining psychologists, Drs. Jane Brake and Stephen Scher, substantially concurred with Dr. Eggerman's assessment.

The second examination, by Dr. William Earl Barrett, focused on Myatt's physical complaints. Dr. Barrett opined that Myatt's physical ailments would not limit his ability "to perform

most work-related activities." Two non-examining physicians, Drs. Gary Higgason and James Ramsey, reviewed Myatt's case and concurred with Dr. Barrett's assessment.

After considering this body of evidence, the ALJ applied the five-step evaluation for disability benefits required by 20 C.F.R. §§ 404.1520 and 416.920 to deny Myatt's claim. The ALJ found that Myatt's physical ailments did not limit him. And although the ALJ found that Myatt cannot resume work as an insurance agent because of a "severe" anxiety disorder, he determined that Myatt retains the mental ability to perform many other jobs.

After the SSA Appeals Council denied his request for review, Myatt sued in district court. The district court upheld the ALJ's decision to deny disability benefits, and Myatt now appeals.

II

We affirm an ALJ's decision, unless the claimant can show a failure to apply the correct legal standard or fact-finding not supported by substantial evidence. *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006). Substantial-evidence review is highly deferential, as we must affirm any factual finding supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).

A

Myatt first contends that the ALJ erred by refusing to give controlling weight to the diagnosis of disability by his treating physician, Dr. Kleykamp. Because the ALJ gave several "good reasons" for rejecting Dr. Kleykamp's opinion, we uphold his discounting of that diagnosis.

The SSA promises claimants that ALJs "will evaluate every medical opinion [they] receive." 20 C.F.R. § 404.1527(d). Yet it also recognizes that not all medical sources need be treated equally, classifying acceptable medical sources into three types: nonexamining sources, nontreating (but examining) sources, and treating sources. *Id.* § 404.1502.

When evaluating medical opinions, the SSA will generally "give more weight to the opinion of a source who has examined [the claimant] than to the opinion of a source who has not examined [the claimant]." *Id.* § 404.1527(d)(1). The SSA will attach the most weight "to opinions from [the claimant's] treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s)." *Id.* § 404.1527(d)(2). Indeed, the SSA will give a treating source's opinion "controlling weight" unless it is either not "well-supported by medically acceptable clinical and laboratory diagnostic techniques" or is "inconsistent with the other substantial evidence in [the] case record." *Id.* And the SSA pledges that it "will always give good reasons in [its] notice of determination or decision for the weight [it gives the] treating source's opinion." *Id.*

This weighing, however, does not extend to a treating physician's conclusion that a claimant is disabled; it is the SSA that ultimately decides this legal question, albeit with the benefit of the

treating physician's diagnostic input. *Id.* § 404.1527(e)(1). Although no "special significance" will be given to opinions of disability, even from a treating source, *id.* § 404.1527(e)(3), "the ALJ still must explain the consideration given to the treating source's opinion[]," *Bass v. Comm'r of Soc. Sec.*, ___ F.3d ___, No. 06-4415, slip op. at 4 (6th Cir. Aug. 21, 2007) (internal quotation marks omitted).

In this case, Dr. Kleykamp opined that Myatt "is unable to work due to several medical problems which require ongoing treatment. These problems include neck pain, back pain, restless legs, depress[ion] and anxiety."

The ALJ declined to give Dr. Kleykamp's opinion controlling weight because "the weight of the evidence" did not support it. First, Myatt claims he has been disabled since March 2000, yet Dr. Kleykamp's treatment records show Myatt first visited Dr. Kleykamp in September 2003 to have three skin lesions removed. The treatment notes from this visit reflect no complaints of anxiety, depression, or physical disability.

Second, Dr. Kleykamp's modest treatment regimen for Myatt is inconsistent with a diagnosis of total disability. Although Myatt challenges this characterization, he admits he has never been hospitalized for mental or physical problems, never needed surgery, never been referred for orthopedic or neurological evaluation, and never received in-patient mental health counseling.

Third, Myatt's clinical signs and the results of his diagnostic tests do not support the conclusion that he is disabled. For example, Dr. Kleykamp referred Myatt to physical therapist

Michael A. Lusk, who wrote to Dr. Kleykamp to tout the success of the therapy sessions in allowing Myatt to achieve "long term goal[] #1," an "80% improvement in overall pain and function." In another instance, Dr. Kleykamp requested MRIs of Myatt's back after Myatt complained of sharp pains and burning. The MRI reports revealed only "mild" findings.

Fourth, Dr. Kleykamp's diagnosis of disability partially relied on his assessment of Myatt's mental health, an area outside of Dr. Kleykamp's expertise. The SSA will "generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist." 20 C.F.R. § 404.1527(d)(5).

All of these good reasons permitted the ALJ to reject Dr. Kleykamp's findings without violating the treating source regulation.

B

Next, Myatt argues that the ALJ elicited flawed testimony from the vocational expert who testified at his hearing; the ALJ's hypothetical questions, he insists, failed to include impairments from which Myatt testified he suffers. This argument lacks merit. Although it is true that an ALJ may assess a claimant's residual functional capacity for work only after all of the claimant's limitations have been taken into account, *id.* § 416.945, the ALJ "is required to incorporate only those limitations [he] accept[s] as credible," *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993). The ALJ found Myatt to be not fully credible due to inconsistencies

between Myatt's testimony, medical history, and information he and his wife submitted to the SSA, and due to Myatt's delay in seeking mental health treatment. Accordingly, substantial evidence supports the ALJ's credibility determination, and the hypothetical questions he posed to the vocational expert pass muster.

C

Finally, Myatt argues that the ALJ's misreading of Exhibit 12F, a "Treatment/Service Plan" intake form from Pathways dated December 2004 ("treatment plan"), skews the substantial-evidence support for his conclusions. The Government agrees that the ALJ misread the treatment plan but argues that the error was harmless. *See Griffeth v. Comm'r of Soc. Sec.*, 217 F. App'x 425, 428 (6th Cir. 2007) ("[E]ven if the ALJ erroneously found [the claimant's] depression to be 'severe,' such an erroneous finding was, at most, harmless error . . . ."); *Potter v. Comm'r of Soc. Sec.*, 223 F. App'x 458, 463–64 (6th Cir. 2007) ("[T]he ALJ's [erroneous] reference to an apparent twelfth-grade education was harmless.").

The treatment plan, signed by Myatt, VanHorn, and Pathways staff psychiatrist Khan Matin, sets forth Myatt's ailments and establishes a series of goals that *will* trigger a successful discharge. The ALJ stated, however, "[a] December 2004 termination report from Pathways indicates that [Myatt] had met all treatment goals. The claimant had a major depressive disorder, recurrent, without psychotic features and a post-traumatic stress disorder." In other words, it appears that the ALJ misinterpreted the document as evidencing *successful completion* of all treatment goals.

This mistaken view shows up in the ALJ's list of factors militating against a finding of disability. Nonetheless, we find the error harmless because the ALJ credited Myatt with *every* mental limitation found by either Dr. Eggerman, Dr. Brake, or Dr. Scher, including moderate limitations in his ability to (1) work with others, (2) interact with the general public, (3) get along with co-workers, and (4) respond appropriately to changes in the workplace. Thus, given the lack of medical evidence in the record to support any further mental impairment, a correct reading of the Pathways report could not have tilted the scale in Myatt's favor.

III

For these reasons, we affirm.