**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 11a0008n.06

No. 10-5025

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

**Jan 04, 2011**

LEONARD GREEN, Clerk

TERESSEA G. HELM,                                    )
                                                     )
    Plaintiff-Appellant,                             )        ON APPEAL FROM THE
                                                     )        UNITED STATES DISTRICT
    v.                                               )        COURT FOR THE WESTERN
                                                     )        DISTRICT OF KENTUCKY
COMMISSIONER OF SOCIAL SECURITY                      )
ADMINISTRATION,                                      )
                                                     )
    Defendant-Appellee.                              )
                                                     )

BEFORE:  SUHRHEINRICH, CLAY, and ROGERS, Circuit Judges.

ROGERS, Circuit Judge.  Teressea Helm challenges the Commissioner's denial of her application for Social Security disability insurance benefits and supplemental security income payments, arguing that the Administrative Law Judge improperly rejected the opinion of her treating physician.  Because the ALJ provided legally sufficient reasons for discounting the treating physician's assessment of Helm's work-related restrictions, the district court properly affirmed the agency's adverse ruling.

Helm formerly worked as a hotel housekeeper.  In 1990, she had back surgery and was diagnosed with sciatica,[1] after which she returned to work for several years.  Helm stopped working

---

[1] Sciatica is a symptom of degenerative disc disease; the term refers to pain radiating along the path of the sciatic nerve from the spinal cord down the back of each leg.

in July 2003 to care for her husband, who had a stroke. Later in 2003, she fell and reinjured her back, and sought treatment from Dr. Rolando Cheng.

Dr. Cheng examined Helm three times between January and May 2004. He noted that Helm was experiencing pain in her lower spine and found that her range of motion was moderately limited. An x-ray revealed "moderate to severe degenerative disc disease." Dr. Cheng found that Helm would need to lie down during the day at unpredictable intervals, that she could sit, stand, and walk for less than two hours in a workday, and that she could only occasionally lift as much as five pounds. Based on these findings, Dr. Cheng concluded that Helm was "permanently disabled." He prescribed pain medication, but did not recommend physical therapy or other alternative treatment. Records from subsequent visits to the Community Health Clinic in Elizabethtown, KY, indicate that Helm was "doing OK on current meds." Helm was also diagnosed with a depressive disorder in 2004.

After Helm filed her application for disability benefits on January 16, 2004, the agency arranged for her to be examined by Dr. D.M. Shivakumar. Like Dr. Cheng, Dr. Shivakumar noted tenderness and reduced range of motion, but observed that Helm had a normal gait, grip, motor strength, and reflexes, that she was able to move around without much difficulty, and that there were no limitations in her ability to manipulate fine objects. Dr. Shivakumar confirmed the diagnosis of degenerative disc disease, but found that Helm could lift and carry ten to fifteen pounds for short periods of time and that she was "limited in prolonged brisk walking, . . . standing, [and] sitting."

Helm was also examined by two other agency medical consultants. Dr. Kenneth Phillips examined Helm on April 4, 2004, and completed a residual functional capacity (RFC) assessment. He noted the medical evidence in the record, including Helm's 1990 surgery and subsequent fall in 2003, the x-rays from Dr. Cheng's examination, and his own observations of muscle weakness. Dr. Phillips concluded that Helm was subject to functional limitations similar to those reported by Dr. Shivakumar. Dr. Jo Anne Sexton examined Helm on August 3, 2004, and her RFC assessment largely echoed Dr. Phillips'. After reviewing the same evidence in the case record, Dr. Sexton endorsed the exertional limitations reported by Dr. Phillips, but concluded that Helm was subject to somewhat more restrictive postural limitations.

At a hearing on November 14, 2005, Helm testified that she was able to perform a range of daily activities such as cooking, laundry, dishwashing, driving an automobile, and grocery shopping, in addition to caring for her husband. The ALJ found that Helm's degenerative disc disease and depression were "severe impairments," but that she retained the functional capacity for light work. Relying on testimony from a vocational expert, the ALJ found that, assuming the functional limitations endorsed by Dr. Cheng, there would be no jobs Helm could perform. However, the ALJ accorded little weight to Dr. Cheng's opinion because, in the ALJ's view, Dr. Cheng's opinion was not supported by objective medical findings. Instead, the ALJ adopted the functional limitations assessed by the agency sources and identified several jobs existing in the local and national economies that were available to Helm. The ALJ thus concluded that Helm was not disabled within the meaning of the Social Security Act.

The Appellate Council denied review on October 17, 2008,[2] and the district court upheld the agency's adverse ruling, reasoning that it was supported by substantial evidence. On appeal, Helm argues that the ALJ improperly weighed the medical source opinions in the record and did not provide legally sufficient reasons for discounting the opinion of her treating physician, Dr. Cheng.

The district court below properly rejected these arguments. In particular, the ALJ properly evaluated the evidence in the record. The ALJ expressly considered Dr. Cheng's opinion, and provided "good reasons" for discounting it. *See* 20 C.F.R. § 404.1527(d)(2); *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 285-86 (6th Cir. 2009); *Allen v. Comm'r of Soc. Sec.*, 561 F.3d 646, 651-52 (6th Cir. 2008). Specifically, the ALJ cited the brevity of Dr. Cheng's treatment relationship with Helm, the lack of objective findings supporting Dr. Cheng's assessment, Helm's conservative treatment history, and her reported ability to perform an array of activities.

A treating physician's opinion is normally entitled to "controlling weight" unless it is either not "well-supported by medically acceptable clinical and laboratory diagnostic techniques" or is "inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2). When the opinion of a treating source is not given "controlling weight," an ALJ must consider several factors—including the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source—in determining

---

[2]On the same day, the Appellate Council declined to review the denial of a second application filed by Helm on March 16, 2006. On appeal, Helm challenges only the denial of her initial application filed on January 16, 2004.

what weight to give the opinion. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (citing 20 C.F.R. § 404.1527(d)(2)).

The regulation requires an ALJ to provide "good reasons" for not giving weight to a treating physician's assessment. 20 C.F.R. § 404.1527(d)(2). The purpose of this requirement is two-fold. First, it "let[s] claimants understand the disposition of their cases, particularly where a claimant knows that [her] physician has deemed [her] disabled and therefore might be bewildered when told by an administrative bureaucracy that she is not." *Wilson*, 378 F.3d at 544 (internal quotations omitted). Second, the requirement "ensures that the ALJ applies the treating physician rule and permits meaningful appellate review of the ALJ's application of the rule." *Id.* Thus, the ALJ's explanation "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." SSR 96-2p, 1996 WL 374188, at *5 (1996).

Here, the ALJ properly declined to accord Dr. Cheng's opinion "controlling weight" because there was substantial contrary evidence in the record.[3] *See* 20 C.F.R. § 404.1527(d)(2). The ALJ

---

[3]The ALJ assumed that Dr. Cheng "may be considered a treating source," although it is questionable whether a physician who examines a patient only three times over a four-month period is a treating source—as opposed to a nontreating (but examining) source. *See Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007) (quoting 20 C.F.R. § 404.1502) ("A 'nontreating source' (but examining source) has examined the claimant 'but does not have, or did not have, an ongoing treatment relationship with' her.").

In *Boucher v. Apfel*, 238 F.3d 419, 2000 WL 1769520, at *9 (6th Cir. Nov. 15, 2000), we held that even though a doctor had examined the claimant three times over a two-year period, he was not a "treating source" because he did not have an ongoing treatment relationship with the claimant. *See also Daniels v. Apfel*, 242 F.3d 388, 2000 WL 1761087, at *2 (10th Cir. Nov. 29, 2000).

noted that Helm was examined by Dr. Shivakumar in March 2004 and that Helm was found to have normal gait, grip, reflexes, and motor strength, and was able to move around without much difficulty. Dr. Shivakumar observed limitation in range of motion but no significant motor loss and no impairment in ambulation. In addition, Drs. Phillips and Sexton found that Helm was capable of light work, with the ability to lift ten pounds frequently and twenty pounds occasionally, so long as she avoided concentrated exposure to extreme temperatures, vibrations, and hazards such as machinery and heights.

Morever, the ALJ provided "good reasons" for discounting Dr. Cheng's opinion. First, in considering "the length of the treatment relationship and the frequency of examination," 20 C.F.R. § 404.1527(d)(2), the ALJ noted that Dr. Cheng had examined Helm on only three occasions between January and May 2004. Thus, Dr. Cheng was not in a position "to provide a detailed, longitudinal picture of [Helm's] medical impairment(s)." *Id.* § 404.1527(d)(2). "The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records." *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). Thus, the brevity of the treatment relationship with Helm supports the ALJ's decision to discount Dr. Cheng's opinion.

---

However, we express no opinion on this question, because even if Dr. Cheng was a treating source, the ALJ provided "good reasons" for discounting his opinion

Second, in considering the "supportability of the opinion [and] consistency of the opinion with the record as a whole," 20 C.F.R. § 404.1527(d)(2), the ALJ noted a lack of objective medical findings supporting Dr. Cheng's assessed limitations. The ALJ found that Dr. Cheng's office notes "contain little to no objective medical findings other tha[n] 'moderate' limitation in range of motion." The ALJ also noted the inconsistency of Dr. Cheng's assessed limitations with the record as a whole, citing the opinions of Dr. Shivakumar and Drs. Phillips and Sexton, Helm's conservative treatment history, and Helm's reported ability to perform household activities.

Helm faults the ALJ's finding that "the record does not clearly document sciatica." But the ALJ accepted that Helm's degenerative disc disease and depression were "severe impairments." A claimant must do more than show that she is severely impaired. To support a finding of disability, the impairment must result in functional limitations. *See* 20 C.F.R. §§ 404.1520(d)-(f); *Higgs. v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988). The ALJ could conclude that the extreme functional limitations assessed by Dr. Cheng were unsupported by objective medical findings and were inconsistent with the record as a whole. *See* 20 C.F.R. § 404.1527(d)(2).

Third, the ALJ noted that Dr. Cheng's modest treatment regimen for Helm—consisting solely of pain medication—was inconsistent with a finding of total disability. *See Myatt v. Comm'r of Soc. Sec.*, 251 F. App'x 332, 2007 WL 3023485, at *2 (6th Cir. Oct. 2, 2007). The ALJ noted that Helm's pain was being effectively managed with medication, and that she had not sought or received physical therapy or other alternative treatment. Finally, the ALJ discounted Dr. Cheng's assessment in part because Helm "continues to perform significant activities around the house," which,

according to the ALJ, was also inconsistent with a finding of total disability. Taken together, these are "good reasons" for discounting Dr. Cheng's opinion.

Contrary to Helm's argument, the ALJ was not required to give relatively less weight to the agency source opinions simply because they were contrary to the opinion of Dr. Cheng. *Cf. Hensley v. Astrue*, 573 F.3d 263, 267 (6th Cir. 2009). The ALJ relied on more than the contrary conclusions of Dr. Shivakumar and Drs. Phillips and Sexton. The policy interpretation to which Helm directs our attention states that the opinions of agency consultants "can be given weight only insofar as they are supported by evidence in the case record." SSR 96-6p, 1996 WL 374180, at *2 (1996). But that ruling also states, "In appropriate circumstances, opinions from State agency medical and psychological consultants and other program physicians and psychologists may be entitled to greater weight than the opinions of treating or examining sources." *Id.* at *3. The ruling provides one example:

> [T]he opinion of a state agency medical or psychological consultant or other program physician may be entitled to greater weight than a treating source's medical opinion if the State agency medical or psychological consultant's opinion is based on a review of a complete case record that includes a medical report from a specialist in the individual's particular impairment which provides more detailed and comprehensive information than what was available to the individual's treating source.

*Id.* This example does not exhaust the range of "appropriate circumstances" under which a non-treating source's opinion may be entitled to greater weight than that of a treating source. *Id.* There is no categorical requirement that the non-treating source's opinion be based on a "complete" or "more detailed and comprehensive" case record. The opinions need only be "supported by evidence

in the case record." *Id.* at \*2. Once the ALJ determined not to accord Dr. Cheng's opinion "controlling weight," the ALJ was required only to provide "good reasons" for giving greater weight to the opinions of agency sources. 20 C.F.R. § 404.1527(d)(2).

Our decision in *Fisk v. Astrue*, 253 F. App'x 580, 2007 WL 3325869 (6th Cir. Nov. 9, 2007), does not require a contrary result. In *Fisk*, we held that the ALJ's failure to consider a treating physician's opinion altogether was reversible error. Here, however, the ALJ not only considered Dr. Cheng's opinion, but provided "good reasons" for discounting it. Nor does *Wilson* support Helm's position; that case held that substantial evidence is not a defense to non-compliance with the reasons-giving requirement. 378 F.3d at 546. In this case, the ALJ clearly complied with the treating source rules, and Helm does not otherwise contest the sufficiency of the evidence supporting the ALJ's decision.

For these reasons, we affirm.