NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a1010n.06

No. 11-6160

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

***Sep 14, 2012***

DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| KATHRYN JOHNSON-HUNT, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| COMMISSIONER OF SOCIAL SECURITY, | ) | MIDDLE DISTRICT OF TENNESSEE |
| | ) | |
| Defendant-Appellee. | ) | |

**BEFORE:  MOORE, WHITE, and LUCERO[*], Circuit Judges.**

**HELENE N. WHITE, Circuit Judge.**  Kathryn Johnson-Hunt appeals from a district-court order affirming the ALJ's determination that she was not disabled under the Social Security Act and, therefore, not entitled to Supplemental Security Income.  We **REVERSE**.

**I.**

Johnson-Hunt was born on September 16, 1959, and was 49 at the time of the ALJ hearing in 2009.  Since January 1993, Johnson-Hunt had been hospitalized at least ten times and admitted to the emergency room (ER) once for psychiatric and alcohol-related conditions, and had been evaluated by a number of health professionals.  She was diagnosed on several occasions with alcohol dependence and some form of mental disorder, including:  major depression, mood disorder, personality disorder, bipolar I affective disorder, schizophrenia, post-traumatic stress disorder

---

[*]The Honorable Carlos F. Lucero, Circuit Judge for the U.S. Court of Appeals for the Tenth Circuit, sitting by designation.

(PTSD), panic disorder, and benzodiazepine dependence. She was also diagnosed with physical conditions including hypertension, bronchial asthma, hypothyroidism and renal insufficiency.

Between January 7, 2004 and November 7, 2005, Johnson-Hunt saw Beth Baxter, M.D., a psychiatrist who diagnosed her with, among other conditions, schizoaffective disorder, PTSD, panic disorder, borderline personality disorder, and poly-substance dependence. On Sep. 29, 2005, Johnson-Hunt was taken to an ER after expressing suicidal thoughts. She reported that she was not feeling well because she was not taking medication, and that she had been self-medicating with alcohol. On July 13, 2006, Johnson-Hunt began treatment with a new psychiatrist, Dr. Christopher Dull, M.D, who initially diagnosed her with bipolar affective disorder I with psychotic features, alcohol dependence in remission, and hypothyroidism.

On October 12, 2006, Dull completed a mental and functional capacity assessment "questionnaire." The magistrate report and recommendation (R&R) accurately summarized the opinions contained therein:

> Dr. Dull diagnosed Plaintiff with "Bipolar I Disorder Most Recent Episode Severe With Unspecified Psychotic Feature," and "Alcohol Dependence in Early Full Remission." Dr. Dull indicated that Plaintiff suffered from: manic syndrome characterized by easy distractibility; involvement in activities that have a high probability of painful consequences which are not recognized; and hallucinations, delusions, or paranoid thinking. He further indicated that Plaintiff suffered from an anxiety related disorder with: (1) generalized persistent anxiety accompanied by motor tension, autonomic hyperactivity, and apprehensive expectation; (2) a persistent irrational fear of a specific object, activity, or situation which results in a compelling desire to avoid the dreaded object, activity, or situation; (3) recurrent and intrusive recollections of a traumatic experience, which are a source of marked distress. Dr. Dull opined that Plaintiff suffered from "a residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause her to decompensate." Dr. Dull also noted that Plaintiff had a "current history of 1 or more

years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement."

(R&R, PID 239 (citations omitted).) Additionally, Dr. Dull indicated that Johnson-Hunt's psychological conditions imposed all of the following restrictions:

1. Marked restriction of activities of daily living;
2. Marked difficulties in maintaining social functioning;
3. Marked difficulties in maintaining concentration, persistence or pace; and
4. Repeated episodes of decompensation,[1] each of extended duration

(A.R at 950–51.)

On November 6, 2006, Johnson-Hunt underwent a consultative physical evaluation by C.E. Varnado, M.D., who concluded that Johnson-Hunt could occasionally lift a maximum of ten pounds for up to one-third of an 8-hour workday and could stand or walk for at least two hours in an 8-hour workday. Non-examining state agency consultants completed physical and mental Residual Functioning Capacity (RFC)[2] assessment forms in November and December 2006, respectively, and once again in May 2007. Relying on the results of the physical examination performed by Dr. Varnado, those RFC assessments found that Johnson-Hunt was not as restricted as Dr. Varnado had concluded.

On November 9, 2006, Robert N. Doran, M.A., a non-treating psychological examiner,

---

[1]Episodes of decompensation are "exacerbations or temporary increases in symptoms or signs accompanied by loss of adaptive functioning, as manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence, or pace." 20 C.F.R. Pt. 404, Subpt. P, App. 1.

[2]A claimant's RFC is an assessment of "the most [the claimant] can still do despite . . . limitations . . . . based on all the relevant evidence in [the] case record." 20 C.F.R. § 416.945(a)(1).

conducted a consultative psychological evaluation on behalf of Dr. Patricia Jasnowitz, Ed. D., by referral of the Disability Determination Section of the Tennessee Department of Human of Services (DDS). He made two relevant findings: (1) Johnson-Hunt did not exhibit signs of anxiety, depression, psychosis, or thought disorder, and "did not describe symptoms of posttraumatic stress disorder, of depression, bipolar disorder, or of panic disorder"; and (2) Johnson-Hunt was "cognitively capable of managing her funds; however, if she use[d] or abuse[d] alcohol, marijuana, or any prescription medication, her judgment [was] likely to be impaired."

Johnson-Hunt applied for Supplemental Security Income (SSI) benefits on August 16, 2006, alleging disability with an onset date of April 1, 2002, due to schizophrenia, bipolar disorder, PTSD, depression, anxiety disorder, eye problems, fatigue, back pain, dyspnea, and asthma. The Social Security Administration (SSA) initially denied her application on December 7, 2006, and upon reconsideration on May 15, 2007. Johnson-Hunt requested and was granted a hearing before an ALJ.

ALJ Hearing

At the ALJ hearing on April 9, 2009, Johnson-Hunt testified on her own behalf, and vocational expert (VE) Gary Sturgill, Ph. D., testified as to the availability of jobs that Johnson-Hunt would be able to perform given her RFC.

Johnson-Hunt testified that she began drinking heavily at some point in her twenties as a result of depression, and that she took pills, drank rubbing alcohol, and cut her wrists to deal with voices that she began hearing in the 1990s. She testified that she worked for her father, but was often unable to get out of bed due to her depression, and that fear of leaving her house and paranoia around other people prevented her from working in non-family settings. When asked to assess her

ability to work on a sustained basis, she stated that she cannot function the way she believes normal people should function, and that she cannot "on a daily basis get [herself] up and get going." (A.R. at 43.)

When asked about her current alcohol consumption, Johnson-Hunt testified that she had been sober since January 1, 2009, and that her testimony with respect to her current conditions coincided with this period of sobriety. She testified that the longest she had gone "without getting drunk" was two years, and that she was currently attending AA meetings once a week. She also stated that in the past three-to-four years, she had on several occasions been sober for a period of about three months.

She testified that the medications she was taking at the time helped her to not hear voices, but that she continued to suffer from insomnia and anxiety. With respect to her physical problems, she testified she had trouble sitting for more than an hour, and her bulging discs prevented her from standing or walking for more than twenty minutes without excruciating pain, and that while physical therapy helped, she could not afford to return because she lacked health insurance. She testified that on her bad days, she could not get out of bed, and that she "get[s] really, really down on [herself]." (A.R. at 44.)

After Johnson-Hunt testified, the ALJ determined, based on her work history and her education, that she would be limited to medium work. The ALJ then questioned VE Dr. Sturgill as to the availability of such work for a person with Johnson-Hunt's limitations, as "set forth by the state agency," which had determined she had the ability to "sustain concentration, persistence, and pace for simple tasks and some detailed work," and the ability "to interact with the general public,

and respond to routine changes." (A.R. at 57–58.) The VE testified that "the job of waitress"—which Johnson-Hunt had once performed—as well as other unskilled work with light and medium exertional requirements, are available in significant numbers in the national economy. When asked about the availability of work with the additional restriction of not being able to work with the general public and coworkers, the VE replied that jobs fitting the description are also available in the national economy. But when asked whether there would be jobs available for someone who has the mental health restrictions as set forth in Dr. Dull's evaluation of Johnson-Hunt, and the restrictions that Johnson-Hunt testified to having, the VE testified that "[t]he marked limitations as well as the repeated episodes of decompensation . . . would preclude work." (A.R. at 60.)

ALJ Decision

The ALJ applied the mandatory five-step sequential evaluation to determine whether Johnson-Hunt was eligible for SSI benefits.[3] First, the ALJ conducted the evaluation without regard

---

[3]The ALJ applies a five-step sequential evaluation process to determine disability. 20 C.F.R. § 416.920. Once the ALJ is able to determine at any point that the claimant is or is not disabled, the ALJ makes the disability determination at that step and does not proceed to the next step. 20 C.F.R. § 416.920(a)(4). Otherwise, the ALJ moves on to the next step until she can make a disability finding. *Id.* Under the five-step evaluation:

First, [the claimant] must demonstrate that [she] is not currently engaged in substantial gainful employment at the time of the disability application. Second, [the claimant] must show that [she] suffers from a severe impairment. Third, if [the claimant] is not engaged in substantial gainful employment and has a severe impairment which is expected to last for at least twelve months, which meets or equals a listed impairment [under 20 C.F.R. Part 404, Subpart P, Appendix 1, she] will be considered disabled . . . . Fourth, if the Commissioner cannot make a determination of disability based on medical evaluations and current work activity and [the claimant] has a severe impairment, the Commissioner will then review [the

to whether alcohol was a contributing factor to her disability.[4]  The ALJ proceeded through the

analysis and made a finding consistent with Dr. Dull's opinion that Johnson-Hunt's impairments

imposed marked limitations in maintaining social functioning and maintaining concentration,

persistence or pace.[5]  But the ALJ disregarded parts of Dull's opinion where he indicated that

Johnson-Hunt had marked difficulties in "maintaining activities of daily living," and his observation

that Johnson-Hunt experienced repeated episodes of decompensation.  Nevertheless, the ALJ

concluded that Johnson-Hunt's impairments met one of the listed impairments under 20 C.F.R. Part

404, Subpart P, Appendix 1, rendering her disabled without considering whether alcohol was

material to the disability.

---

claimant's] residual functional capacity (RFC) and relevant past work to determine
if [she] can do past work; if so, [he or she] is not disabled.  If [the claimant's]
impairment prevents [her] from doing past work, the analysis proceeds to the fifth
step: the Commissioner will consider [his or her] RFC, age, education and past work
experience to determine if [she] can perform other work.  If [she] cannot perform
other work, the Commissioner will find [her] disabled.

*Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (2010) (citations omitted).  "[T]he claimant bears
the burden of proof through the first four steps and the Commissioner bears the burden of proof at
the final step." *Longworth v. Comm'r Soc. Sec. Admin.*, 402 F.3d 591, 595 (6th Cir. 2005) (citation
omitted).

[4]Under the Act, "An individual shall not be considered to be disabled . . . if alcoholism or
drug addiction would . . . be a contributing factor material to the Commissioner's determination that
the individual is disabled."  42 U.S.C. § 1382c(a)(3)(J).  The ALJ makes this determination by
"evaluat[ing] which of [the claimant's] current physical and mental limitations, upon which [the
SSA] based [its] current disability determination, would remain if [the claimant] stopped using drugs
or alcohol," and determining whether those remaining limitations would be disabling. 20 C.F.R. §
416.935(b)(2).  If the remaining limitations are not disabling, the ALJ makes a finding that
alcoholism materially contributed to the finding of disability, and the claimant is not entitled to SSI
benefits. *Id.*

[5]This is the only part of the ALJ decision that explicitly mentions Dr. Dull's findings.

Next, the ALJ sought to determine whether alcoholism was a contributing factor material to the disability determination (the alcoholism-materiality determination), which would preclude Johnson-Hunt from being considered disabled under the Act. 42 U.S.C. § 1382c(a)(3)(J). Under the regulations, the "key factor" to the alcoholism-materiality determination is whether Johnson-Hunt would still be disabled if she stopped using alcohol. *See* 20 C.F.R. § 416.935(b)(1).

Proceeding through the analysis, the ALJ found that if Johnson-Hunt stopped her substance use, she would continue to have a severe impairment or combination of impairments due to her musculoskeletal impairment and bipolar disorder, but that they would cease to have the severity to meet or equal any of the listed impairments.

At steps 4 and 5, the ALJ concluded that if Johnson-Hunt were to stop using alcohol, she would retain the RFC to perform some forms of medium-exertion work. Although the ALJ determined that Johnson-Hunt had no past relevant work activity, the ALJ found that if Johnson-Hunt stopped her substance use, "she would be capable of making a successful adjustment to work that exists in significant numbers in the national economy." (A.R. at 31.)

Accordingly, the ALJ determined that Johnson-Hunt's alcohol abuse was a contributing factor to the determination of disability and, therefore, she "has not been disabled within the meaning of the Social Security Act at any time from the date the application was filed through the date of this decision." (A.R. at 23, 31.) The ALJ decision became the Commissioner's final decision when the Appeals Council denied Johnson-Hunt's request for review. (A.R. at 1.)

District Court Proceedings

On July 13, 2010, Plaintiff filed a complaint in the U.S. District Court for the Middle District of Tennessee claiming that the Commissioner erred in finding that she was not disabled and therefore not entitled to SSI. Johnson-Hunt filed a motion for judgment on the administrative record, asserting that the ALJ erred in failing to give any reason for disregarding the opinions of treating physician Dr. Dull and consulting physician Dr. Varnado, in misapplying the standard for determining whether alcohol is a contributing factor material to the disability determination, and in making an adverse credibility finding against Johnson-Hunt.

A magistrate judge filed a Report and Recommendation (R&R) recommending that Johnson-Hunt's Motion for Judgment on the Administrative Record be denied and the decision of the Commissioner be affirmed. The magistrate judge determined that the ALJ did not err in disregarding Dull's opinion at the alcoholism-materiality stage because, "Dr. Dull did not render an opinion regarding whether Plaintiff's alcoholism was a contributing factor material to her disability." (Second R&R, PID 240.) Further, the magistrate judge found that the ALJ did not err in failing to explain why she rejected Dr. Varnado's opinion "[b]ecause Dr. Varnado's restrictions were not supported by the evidence on record (including his own examination findings)," and opinions consistent with the evidence of record deserved greater weight. (Second R&R, PID 242 (citation omitted).)

The magistrate judge also concluded that the ALJ applied the proper standard in making the alcoholism-materiality determination, and that the alcoholism-materiality determination was

supported by substantial evidence. Finally, the magistrate judge concluded that the ALJs's credibility finding was supported by substantial evidence. (Second R&R, PID 252.)

Plaintiff filed an objection to the R&R on September, 2, 2011. (Objections to R&R, PID 254.) On September 21, 2011, the district court adopted the magistrate judge's recommendations. Plaintiff timely appealed.

**II.**

Johnson-Hunt claims that in finding that she was not disabled within the meaning of the SSA, the ALJ erred in four respects: (1) failing to accord proper weight to the opinion of her treating physician, Dr. Dull, without offering any reason; (2) improperly dismissing the opinion of Appellant's consulting physician, Dr. Varnado; (3) applying the incorrect standard in determining that Johnson-Hunt's alcoholism was material to her disability; and (4) making a credibility finding unsupported by substantial evidence. Because we conclude that the ALJ violated the treating-physician rule by failing to give good reasons for the weight given to the treating physician's opinion, we reverse the district court without reaching Johnson-Hunt's other claims.

**A. Standard of Review**

This Court reviews *de novo* a district court's decisions regarding social security benefits. *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011) (citation omitted), *amending Cole v. Astrue*, 652 F.3d 653 (6th Cir. 2011). "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g); *see also Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). Thus, this Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 3d3,

387 (6th Cir. 1984) (citation omitted). The reviewing court is confined to the determination of whether substantial evidence supports the Commissioner's decision and whether the correct legal standards were applied. *Cole*, 661 F.3d at 937.

"Substantial evidence is more than a scintilla of evidence but less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citations omitted). "Even if the evidence could also support another conclusion, the decision of the [ALJ] must stand if the evidence could reasonably support the conclusion reached." *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389–90 (6th Cir. 1999) (citation omitted). This is because "there is a 'zone of choice' within which the Commissioner can act, without the fear of court interference." *Buxton*, 246 F.3d at 773 (citation omitted). But "[i]f the Hearing Examiner . . . has been in error in evaluating the facts by correct legal standards, there is no substantial evidence to support his findings." *Branham*, 383 F.2d at 627.

**B. Treating Physician Rule**

Johnson-Hunt argues that the ALJ erred in failing to give controlling weight to the opinion of treating psychiatrist Dr. Dull, in violation of the "treating physician rule," 20 C.F.R. § 416.927.[6] In the alternative, she claims that even if his opinion was not entitled to controlling weight, it was entitled to some weight, and the ALJ failed to provide any reasons for the weight given to the

---

[6] The numbering of the treating physician rules recently changed. Effective March 26, 2012, section 416.927(d)(2) became 416.927(c)(2), and section 404.1527(d)(2)— the identically worded and interpreted rule applying to Federal Old-Age, Survivors and Disability Insurance—became 404.1527(c)(2).

treating source's opinion, in violation of the "good-reasons requirement." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

Under the "treating physician rule," in making a disability determination, the ALJ evaluates every medical opinion received, but is required to give controlling weight to the treating physician's opinion on the nature and severity of the impairment, provided that the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *see Cole*, 661 F.3d at 937. If the ALJ does not give controlling weight to the treating source's opinion, the ALJ must then consider and balance the following factors to determine how much weight to give the opinion: length of the treatment relationship and the frequency of examination; nature and extent of the treatment relationship; extent to which the opinion is supported by relevant evidence, extent to which the opinion is consistent with the record as a whole; and whether the treating physician is a specialist in the area on which the disability claim is based. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

The ALJ also has the obligation to provide "good reasons . . . supported by the evidence in the case record," for the weight it decides to give to the treating source's opinion. *Cole*, 661 F.3d at 937, 939 (citation and internal quotation marks omitted); 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Thus, if the ALJ does not give controlling weight to the treating source's opinion, she must: (1) "clarify whether [the treating source's opinion] was not well-supported by medically acceptable clinical and laboratory diagnostic techniques or was inconsistent with the other substantial evidence in the case record . . . identify[ing] the evidence supporting such a finding"; and (2)

"explain [her] application of the factors listed in 20 C.F.R. § 404.1527([c])(2) to determine the weight to give to [the treating physician's] opinion." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546 (6th Cir. 2004) (citation and internal quotation marks omitted). Further, "the ALJ's explanation must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and reasons for that weight." *Helm v. Comm'r of Soc. Sec. Admin.*, 405 F. App'x 997, 1000 (6th Cir. 2011) (citation and internal quotation marks omitted).

Here, the Commissioner concedes that the ALJ did not consider Dr. Dull's opinion in determining whether alcohol was a contributing factor material to the finding that Johnson-Hunt was disabled, but argues the ALJ failed to do so because Dr. Dull did not give an opinion with respect to the alcoholism-materiality issue. According to the Commissioner, "only Dr. Jasnowitz's opinion[7] . . . considered Johnson-Hunt's condition while not abusing alcohol." (Comm'r Br. at 27.) The Commissioner dismisses Dull's diagnosis of "alcohol dependence in early full remission," arguing that "Dr. Dull's discussion of her impairment clearly indicates that he was only considering her lifelong condition." (*Id.*) The Commissioner also points to the diagnoses of Dr. Sailors, who saw Johnson-Hunt a few months after Dr. Dull gave his October 12, 2006 opinion, and gave diagnoses

---

[7]Dr. Jasnowitz's evaluation was actually conducted and signed by Robert Doran. (A.R. 1333–40.) Johnson-Hunt argues that, because Mr. Doran "is not an acceptable medical source under SSA regulations," the opinions of the non-examining state agency consultants that were based on Mr. Doran's findings cannot comprise substantial evidence against Dr. Dull's opinion, and thus may not be grounds for failing to give Dr. Dull's opinion controlling weight. (Johnson-Hunt Br. at 31.) We need not reach the merits of this claim because even if Dr. Dull's opinion was contradicted by substantial evidence, the ALJ was required to provide good reasons for the weight she assigned to Dr. Dull's opinion. *See Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546 (6th Cir. 2004) (concluding that substantial evidence is not "a defense to non-compliance with § 1527(c)(2)") (citation omitted).

that were inconsistent with Dr. Dull's opinion. (A.R. at 1379 (finding Appellant was not in acute distress, was not anxious, and had depressed affect but with no suicidal ideation).)

The Commissioner's argument is problematic in two respects. First, it does not necessarily follow from the observation that Dr. Dull considered Johnson-Hunt's lifelong condition that he did not also consider Johnson-Hunt's condition while not abusing alcohol. Although Dr. Dull did not explicitly state that alcoholism was not a contributing factor material to her disability, Dr. Dull's opinion can be read as addressing Johnson-Hunt's condition while not abusing alcohol, the "key factor" in the alcoholism-materiality determination. *See* 20 C.F.R. § 416.935(b)(1). Dr. Dull diagnosed Johnson-Hunt with alcohol dependence in early full remission, which indicates he was aware that, at the time of the examination, Johnson-Hunt was not abusing alcohol. Further, all of the questions in the questionnaire filled out by Dr. Dull were phrased in the present tense,[8] and did not ask about past conditions. That he was referring to her condition as she presented—without the alcohol abuse he determined to be in remission—can also be inferred from the fact that, just five weeks before he filled out the questionnaire, Dr. Dull diagnosed Johnson-Hunt with Benzodiazepine dependence—a diagnosis absent from the questionnaire. (A.R. at 723, 950.)

Second, and more importantly, the Commissioner's assertion that Dr. Dull did not provide an opinion as to the alcoholism-materiality determination is not evident from the ALJ decision. The ALJ did not state as much, nor did she give any reason that would "permit[] meaningful and efficient review of [her] application of the treating physician rule." *Cole*, 661 F.3d at 938 (citation omitted).

---

[8]For example, "Does this individual's psychological condition(s), if any, impose any of the following: . . . ." (A.R. at 951).

-14-

We have recognized that the treating physician rule is a substantial right that "provides claimants with an important procedural safeguard," and restricts the SSA's ability to "relax or disregard the rule in an ad hoc fashion." *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 747 (6th Cir. 2007) (internal quotation marks omitted) (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546–7 (6th Cir. 2004)). Accordingly, we have remanded in cases where the ALJ failed to provide any reason or when the reason for discounting the treating source's opinion was found inadequate. *Rife v. Comm'r of Soc. Sec.*, No. 1101461, 2012 WL 2149794 at *2 (6th Cir. June 13, 2012) (reversing the Commissioner's decision where the ALJ disposed of the treating physician's opinion in one sentence, stating that "the restrictions identified by [the treating physician] are not supported by objective evidence"); *Hensley v. Astrue*, 573 F.3d 263, 266–67 (6th Cir. 2011) (finding that the ALJ cannot reject the treating physician's opinion by simply noting that the treating physician's opinion was contradicted by another physician's opinion); *Fisk v. Astrue*, 253 F. App'x 580, 585 (6th Cir. 2007) (concluding that the ALJ's observation that the treating source's opinion was not entitled to deferential weight because it was inconsistent with objective findings did not satisfy the treating physician rule because the ALJ failed to consider "the nature and extent of . . . the treatment relationship . . . , including the kinds and extent of examinations and testings . . . performed or ordered" by the treating physician). Here, in the absence of any discussion of Dr. Dull's opinion, it is not clear what "weight the [ALJ] gave to the treating source's medical opinion and reasons for that weight." *Helm*, 405 F. App'x at 1000 (citation omitted).

The Error Was Not Harmless

We have concluded that a failure to give good reasons can be deemed harmless error if any

of three criteria are met:

> 1. a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it;
> 2. if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion; or
> 3. where the Commissioner has met the goal of [the good reasons requirement] even though she has not complied with the terms of the regulation.

*Cole*, 661 F.3d at 940 (citation and internal quotation marks omitted).

The ALJ's failure to provide good reasons regarding the weight accorded Dr. Dull's opinion

with respect to the alcoholism-materiality determination does not meet any of the harmless-error

criteria. Dr. Dull's opinion was not patently deficient, as Johnson-Hunt's medical records contain

observations by other medical professionals "that are at the very least[] not inconsistent with [Dr.

Dull's] opinions." *Blakley*, 581 F.3d at 409-10. Nor does the second harmless-error criterion apply,

as the ALJ's conclusions with respect to Johnson-Hunt's disability were inconsistent with Dr. Dull's

findings.

Likewise, the goals of the good-reasons requirement were not met. The good-reasons

requirement serves two purposes. First, it "safeguard[s] the claimant's procedural rights" by

"let[ting] claimants understand the disposition of their cases, particularly in situations where a

claimant knows that his physician has deemed him disabled and therefore might be especially

bewildered when told by an administrative bureaucracy that he is not." *Cole*, 661 F.3d at 937-38

(citation, alteration, and internal quotation marks omitted). Second, it "ensures that the ALJ applies

the treating physician rule and permits meaningful appellate review of the ALJ's application of the rule." *Helm*, 405 F. App'x at 1000 (citation omitted). Here, we "cannot engage in meaningful review of the ALJ's decision because her reasoning is not sufficiently specific to make clear that the ALJ recognized and evaluated the treating relationships of [Dr. Dull]." *Blakley*, 581 F.3d at 409 (citation and internal quotation marks omitted) ("ALJ's failure to follow the [good reasons rule] does not qualify as harmless error where we cannot engage in 'meaningful review'"). In the absence of any mention of Dr. Dull's opinion in the alcoholism-materiality discussion, "we just do not know why the ALJ disregarded [Dr. Dull's opinion], and the goals of [the good reasons requirement] cannot be satisfied by bald speculation." *Bowen*, 478 F.3d at 749.

"The ALJ's failure to follow agency rules and regulations denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Cole*, 661 F.3d at 939-40 (citation and internal quotation marks omitted). Where a failure to provide good reasons is not harmless, we "do not hesitate to remand . . . and we will continue remanding when we encounter opinions from ALJ's that do not comprehensively set forth the reasons for the weight assigned to a treating physician's opinion." *Id.* at 939 (citation omitted). Accordingly, we vacate the district court's decision and remand for the Commissioner to address whether Dr. Dull's opinion should be given controlling weight, and if not, to provide good reasons for the weight given pursuant to the SSA's treating physician rule and the good reasons requirement. Because we reverse on the basis that the ALJ violated the treating physician rule and the good-reasons requirement, we need not reach Johnson-Hunt's remaining arguments.

**III.**

For the foregoing reasons, we **VACATE** the judgment of the district court and **REMAND**

for further proceedings.