NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 07a0788n.06
Filed: November 9, 2007

No. 06-4677

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

MICHAEL FISK,                                )
                                             )
        Plaintiff-Appellee,                  )
                                             )
v.                                           )    ON APPEAL FROM THE UNITED
                                             )    STATES DISTRICT COURT FOR THE
MICHAEL J. ASTRUE,                           )    SOUTHERN DISTRICT OF OHIO
COMMISSIONER OF SOCIAL SECURITY,             )
                                             )
        Defendant-Appellant.                 )

Before: BOGGS, Chief Judge; MARTIN and SUTTON, Circuit Judges.

SUTTON, Circuit Judge. The Commissioner of Social Security seeks review of a district court's judgment vacating and remanding an ALJ's denial of benefits to Michael Fisk. On the one hand, we agree with the Commissioner that, even if the district court incorrectly assigned error to the ALJ's ruling that some of Fisk's impairments were not "severe," any error was harmless. On the other hand, we agree with Fisk that the district court correctly identified a material failure by the ALJ to follow the procedural requirements of 20 C.F.R. § 404.1527(d)(2) before disregarding the opinion of Fisk's treating physician. We accordingly reverse in part, affirm in part and remand the case to the agency to correct the procedural error.

I.

Born in 1950, Michael Fisk is married and has four teenage children. Fisk graduated from the police academy in 1975 and earned an Associate's degree in criminal justice in 1992. Over the past 20 years, he has worked as a restaurant manager, delivery driver, corrections officer, security guard and mill worker. In March 2001, while working at a mill in Florida, Fisk began suffering from a variety of conditions, including "sudden blackouts from [vaso]vagal [and] hypertension, constant back pain, hand cramps . . . from osteoarthritis, headaches, nausea, hot flashes from . . . diabetes along with shak[i]ness in hands and inability to focus vision [and] lack of energy." AR 108. He became unable to work at the mill on October 5, 2001, he alleges, and he quit working there on October 8. In the last few months of 2001, Fisk applied for disability insurance benefits and Supplemental Security Income, claiming he was disabled due to uncontrolled diabetes, hypertension, osteoarthritis, vasovagal syncope and diabetic retinopathy.

Fisk, regrettably, is no stranger to doctors' offices. Beginning in 2000, he suffered from chest pain, fatigue, nausea, vomiting, high blood sugar and high cholesterol. His treating physician, Dr. Marcus Williams, diagnosed him with onset diabetes mellitus and uncontrolled hypertension but found "no evidence of any significant coronary artery disease." AR 266. In April and October 2001, Fisk made two separate visits to the emergency room. During the first visit, a chest x-ray revealed right lower lobe pneumonia, and Dr. Williams noted that Fisk had an "episode of near syncope"—or fainting. AR 161; *see* 8 Lee R. Russ et al., Attorneys Medical Advisor § 75:36. After the second visit, the hospital advised Fisk to follow up with his physician. In October, Fisk began to see Dr.

Chanun Park, who diagnosed Fisk with Type II diabetes mellitus, obesity, gastritis, hypertension and osteoarthritis. Dr. Park recommended that Fisk "refrain from working" in the mill because it "deals with heavy duty machine tools without air conditioning." AR 205. In response to a request made by the state agency responsible for processing Fisk's claim for benefits, Dr. Park opined that Fisk had no loss of motion or deformity of the major joints; minimal muscle spasm, loss of motion of the spine and deficits in the extremities; a 4/5 grip strength; normal gait and station; the ability to squat; and the ability to "sometimes" walk on toes and heels. AR 199.

The state agency also requested residual functional capacity assessments from other physicians who had reviewed Fisk's records. In August 2002, Dr. A.E. Archibald-Long concluded that Fisk had "several credible impairments" but maintained the ability to lift up to 50 pounds occasionally and 25 pounds frequently; to stand or walk for a total of about 6 hours per day; and to sit for a total of 6 hours per day. AR 260. To support his assessment, Dr. Archibald-Long listed several of Fisk's conditions, including hypertension and diabetes without end-organ damage and non-occlusive coronary artery disease. Dr. J.D. Perez recommended the same exertional limitations and added that Fisk should avoid even moderate exposure to fumes, odors, dusts, gases and poor ventilation.

In January 2003, Fisk and his family moved from Florida to Ohio, where Dr. Anil Agarwal became Fisk's treating physician. Dr. Agarwal referred Fisk to the Dayton Eye Associates, but the physician there found no evidence of diabetic retinopathy. He also referred Fisk to Dr. Irshad Hussain, a cardiologist who noted that Fisk had "[a]typical chest pain for cardiac ischemia" and

multiple risk factors. AR 327. On March 3, Dr. Agarwal completed a report listing Fisk's numerous medical problems and noting a number of limitations: Fisk could stand or walk for only one to two hours per day and for up to one hour without interruption; he could sit for up to one hour per day; he could lift up to five pounds; he had a "markedly limited" ability to push, pull, bend, reach, handle and make repetitive foot movements; and he had a "moderately limited" ability to see. AR 370.

Between March and October, Fisk saw many more specialists for consultations, generally at the recommendation of Dr. Agarwal. Dr. Mangala Venkatesh conducted a neurological examination based on Fisk's tremors, noted that Fisk had a "trace tremor" in his hands "with posture and action" and concluded that Fisk may have mild essential tremor—a nerve disorder, *see* 3 Russ et al., *supra*, § 28:371—or mild Parkinson's syndrome. AR 291. Dr. Ramesh K. Gandhi discovered a small hiatal hernia with mild inflammation. At the Center for Cholesterol Treatment and Education, Dr. Lawrence Mieczkowski modified Fisk's medications for hyperlipidemia—a condition associated with high cholesterol, *see* 8 Russ et al., *supra*, § 85:16—and diabetes. In September, testing showed "fatty liver," a chronic liver condition often found in obese diabetics, AR 368; *see* Leon A. Adams et al., *Nonalcoholic Fatty Liver Disease*, 172(7) Canadian Med. Ass'n J. 899, 899 (2005), and an x-ray revealed sclerotic changes in the shoulder area that "may reflect chronic [rotator] cuff disease," AR 363; *see* 4 Russ et al., *supra*, § 35:126. Dr. Robert Hawkins noted that Fisk's cervical spine had a "limited range of motion in all planes" and that his shoulders had "limited active range of motion but normal passive range of motion." AR 379. Based on Fisk's left-shoulder symptoms, Dr. Hawkins concluded that Fisk suffered from osteoarthritis and probable diabetic tendonopathy,

a tendon condition. An x-ray of Fisk's right knee revealed moderately severe arthropathy, or joint disease.

On October 4, Fisk was hospitalized overnight for chest and throat pain and an episode of dizziness. Dr. Hussain ordered a cardiac catherization, which showed "mild single vessel coronary artery disease." AR 316.

In a letter to Fisk's attorney on November 10, Dr. Agarwal stated that Fisk "has been totally disabled since October 2001" and noted that Fisk suffers from "non-insulin dependent diabetes mellitus, hypertension, vasovagal syncope, severe right knee arthropathy, fatty liver, cysts of liver, arthritis of back and hand, erectile dysfunction, heart murmur, diabetic retinopathy, diverticulosis, low testosterone, hyperlipidemia, tremors in hand radiating up arm and down legs, cholecystitis, cholithiasis, 50 to 60% blockage in left coronary artery, hiatal hernia, GERD and bradycardia." AR 340. In his functional capacity assessment, Dr. Agarwal recommended significant limitations: Fisk could lift and carry up to five pounds occasionally; he could stand or walk for one to two hours in an eight-hour day but only up to one hour without interruption; he could sit for one to two hours in an eight-hour day but only up to one hour without interruption; he could "never" climb, balance, stoop, crouch, kneel or crawl; his impairments affected his ability to reach, push and pull because he "has limited mobility and is at risk for falls [and] passing out," AR 344; and he should not work in environments involving heights, moving machinery, chemicals, temperature extremes, vibration, dust, fumes and humidity because he "is at risk for falls [and] passing out" and has "limited mobility," AR 345. Dr. Agarwal also cited Fisk's arthritis, vasovagal syncope and tremors in support

of his findings and attached 32 pages of supporting documentation.

When the agency denied Fisk's application for benefits, he sought review of the decision. The ALJ concluded that Fisk was not under a "disability" as defined by the Social Security Act; although the ALJ determined that Fisk suffered from severe impairments of right knee osteoarthritis and dysthymia (a type of mild chronic depression, *see* Fisk Br. at 11 n.2), the ALJ maintained that Fisk retained the residual functional capacity to perform work in the Dayton area as an injection molding machine tender, an assembler, a hand packager or a machine packager.

After the Appeals Council denied review, Fisk sought judicial review in the district court. Adopting a magistrate judge's report and recommendation that identified several errors in the ALJ's handling of the case, the district court remanded the case to the agency.

II.

The question in these cases is whether the ALJ applied the correct legal standard and whether substantial evidence supports the ALJ's findings. *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997). We give de novo review to the district court's conclusions on each front. *Valley v. Comm'r of Soc. Sec.*, 427 F.3d 388, 390 (6th Cir. 2005).

A.

The Commissioner argues that the district court erred in holding that the ALJ committed reversible legal error at step two of the five-step disability analysis, which asks whether the individual has a "severe medically determinable physical or mental impairment" or "a combination of impairments that is severe." 20 C.F.R. § 404.1520(a)(4)(ii). The ALJ found that Fisk had only two severe impairments—right knee osteoarthritis and dysthmyia—rejecting in the process Fisk's other allegedly severe impairments, including mild coronary artery disease and uncontrolled diabetes. The district court held that the ALJ erred by applying the incorrect standard for severity and by injecting his lay opinion into the analysis.

When an ALJ determines that one or more impairments is severe, the ALJ "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" Soc. Sec. Rul. 96-8p, 1996 WL 374184, at *5. And when an ALJ considers all of a claimant's impairments in the remaining steps of the disability determination, an ALJ's failure to find additional severe impairments at step two "[does] not constitute reversible error." *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987). In *Maziarz*, the agency determined that the claimant suffered from several severe impairments but that his cervical condition was not severe. *Id.* Because the agency continued with the remaining steps in the disability determination and because the agency "properly could consider claimant's cervical condition in determining whether claimant retained sufficient residual functional capacity to allow him to perform substantial gainful activity," the court held that any error at step two was harmless and that it was

therefore "unnecessary to decide" whether the agency erred in failing to find that the claimant's cervical condition constituted a severe impairment. *Id.*

The same conclusion applies here. As in *Maziarz*, the ALJ decided that Fisk suffered from some severe impairments but that his remaining conditions were not severe. In the remaining steps of the disability determination, the ALJ "consider[ed] limitations and restrictions imposed by all of [Fisk]'s impairments," including his non-severe impairments. Soc. Sec. Rul. 96-8p, 1996 WL 374184, at *5. When he assessed Fisk's residual functional capacity, the ALJ accounted for Fisk's claim of coronary artery disease, stating that Fisk "underwent extensive cardiac evaluation that was negative for significant coronary disease." AR 25. The ALJ also considered Fisk's diabetes, explaining that "the record did not document end organ damage secondary to . . . diabetes." *Id.* Because the ALJ considered these impairments when determining Fisk's residual functional capacity, "[w]e find it unnecessary to decide" whether the ALJ erred in classifying the impairments as non-severe at step two. *Maziarz*, 837 F.2d at 244. We thus reverse the district court's contrary conclusion on this point.

B.

The district court also determined that the ALJ committed procedural error in the remaining steps of its analysis by insufficiently accounting for the medical opinion of Dr. Anil Agarwal, a treating physician. As to that, we agree.

The opinions of treating physicians generally receive considerable, though not always controlling, weight. 20 C.F.R. § 404.1527(d)(2). The ALJ must "give good reasons in [his] notice of determination or decision for the weight [it] give[s] [a] treating source's opinion." *Id.* When an ALJ does not give controlling weight to a treating physician, the ALJ "must" consider a number of factors, including the length of the treatment relationship, frequency of examination, nature and extent of the treatment relationship, supportability of the opinion, consistency with the record as a whole and any specialization of the treating source. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); *see also* 20 C.F.R. § 404.1527(d)(2). The ALJ's explanation "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5. When an ALJ fails to follow these procedural rules, we will reverse and remand unless the error is harmless. *See Wilson*, 378 F.3d at 547.

Dr. Agarwal treated Fisk after he moved to Ohio in January 2003, referred Fisk to multiple specialists and completed two reports in October and November that noted Fisk's multiple diagnoses and that recommended significant limitations. In rejecting Dr. Agarwal's opinion, the ALJ stated that "Dr. Agarwal's opinion is not accepted as controlling, or even entitled to deferential weight, based on the lack of support from objective findings in the overall record." AR 25. The ALJ reasoned that Dr. Agarwal's recommended limitations were unsupported by the record because Fisk's arthritis was in the right knee only, because Fisk's cardiac evaluations were "negative for

significant coronary disease" and because the record "does not document significant difficulty with ambulation or range of motion, motor strength, sensation, grip, or fine manipulation." AR 25.

The ALJ instead relied on the opinion of Dr. Archibald-Long, the physician who reviewed Fisk's file at the state agency's request in August 2002. In determining Fisk's residual functional capacity, the ALJ adopted Dr. Archibald-Long's recommended lifting restriction and agreed with Dr. Archibald-Long that "the record did not document end organ damage secondary to hypertension or diabetes, there was no physical evidence of severe motor, sensory, or neurological deficits, the claimant had normal gait and dexterity on examination, and cardiac catheterization did not show significant occlusion of critical arteries." AR 25.

Even if we assume for the sake of argument that the ALJ correctly determined that objective medical evidence does not support Dr. Agarwal's opinion, the ALJ's reason for rejecting the treating-physician opinion does not meet the agency's self-imposed procedural requirements. "[A] finding that a treating source medical opinion . . . is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to 'controlling weight,' not that the opinion should be rejected," the agency has explained. Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *4. "Treating source medical opinions are still entitled to deference and *must be weighed using all of the factors provided in 20 CFR 404.1527 . . . .*" *Id.* (emphasis added). The regulations required the ALJ to consider the nature and extent of Fisk's treatment relationship with Dr. Agarwal, including "the kinds and extent of examinations and testing [that Dr. Agarwal] performed or ordered

from specialists and independent laboratories." 20 C.F.R. § 404.1527(d)(2)(ii); *see also* Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *4.

The ALJ did not do this. He failed to recognize that Dr. Agarwal referred Fisk to at least five specialists for a variety of conditions: the Dayton Eye Associates for a diabetic eye evaluation; Dr. Hussain for a cardiac evaluation; Dr. Venkatash for a neurological consultation based on Fisk's upper extremity tremors; Dr. Mieczkowski for cholesterol testing at the Center for Cholesterol Treatment and Education; and Dr. Hawkins for polyarthralgias. The ALJ also failed to appreciate or at least acknowledge that Dr. Agarwal's opinion accounted for a year's worth of medical evidence that the earlier state physicians' reviews did not consider, such as stenosis of the arteries, AR 316, "[a]typical chest pain," AR 333, a "trace tremor," AR 291, limited range of motion and "probable diabetic tendonopathy," AR 379, fatty liver and "sclerotic changes [that] may reflect chronic cuff disease," AR 363. Nothing in the ALJ's opinion indicates that he accounted for the "nature and extent" of Dr. Agarwal's treating relationship. Absent a "sufficiently specific" explanation on this point, we cannot engage in meaningful review of the "reasons for [the] weight" that the ALJ gave to Dr. Agarwal's opinion. Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5.

To be sure, the ALJ's decision to give greater weight to Dr. Archibald-Long's opinion was not, in and of itself, error. We recognize that "[i]n appropriate circumstances, opinions from State agency medical . . . consultants . . . may be entitled to greater weight than the opinions of treating or examining sources." Soc. Sec. Rul. 96-6p, 1996 WL 374180, at *3. This may be true, for example, if "the State agency medical . . . consultant's opinion is based on a review of a complete

case record that . . . provides more detailed and comprehensive information than what was available to the individual's treating source." *Id.* But where, as here, the *treating* source referred Fisk to numerous sources and made recommendations that accounted for a year's worth of specialists' opinions, we require some indication that the ALJ at least considered these facts before giving greater weight to an opinion that is not "based on a review of a complete case record." *Id.*; *see also* 20 C.F.R. § 404.1527(d)(2)(ii).

There is, it is true, a narrow category of cases in which a "*de minimis*" procedural violation may constitute harmless error, such as when "a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it" or where the Commissioner "has met the goal of . . . the procedural safeguard of reasons." *Wilson*, 378 F.3d at 547. But this is not the "rare case" where "the ALJ's analysis [met] the goal of the rule even if not . . . its letter." *Nelson v. Comm'r of Soc. Sec.*, 195 F. App'x 462, 472 (6th Cir. Aug. 28, 2006). We cannot engage in "'meaningful review'" of the ALJ's decision, *id.* (quoting *Wilson*, 378 F.3d at 544), because his reasoning is not "sufficiently specific to make clear" that the ALJ realized the nature and extent of Dr. Agarwal's treating relationship, Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5.

Nor was Dr. Agarwal's recommendation "so patently deficient that the Commissioner could not possibly credit it." *Wilson*, 378 F.3d at 547. While Dr. Agarwal would have done well to provide more explanation to support his recommendations, he supported his assessment by referencing his medical findings of "arthritis—knee, back and hands," "tremors" and "vasovagal syncope." AR 343. To support his recommended physical function limitations on reaching, pushing

and pulling and his recommended work-environment limtations, Dr. Agarwal also noted that the "patient is at risk for falls [and] passing out. [P]atient has limited mobility." AR 344–45. He repeatedly wrote, moreover, "see attached" next to his explanation, leading the reader to 32 pages of supporting treatment records from his office as well as laboratory reports and specialists' assessments. *See* AR 347–78.

To the extent the Commissioner persists that substantial evidence nonetheless supports the ALJ's treatment of Dr. Agarwal's opinion, that is beside the point. "[T]o recognize substantial evidence as a defense to non-compliance with § 1527(d)(2)[] would afford the Commissioner the ability [to] violate the regulation with impunity and render the protections promised therein illusory." *Wilson*, 378 F.3d at 546.

III.

For these reasons, we reverse the district court's assignment of error at step two, and we affirm the district court's decision to vacate the Commissioner's non-disability finding based on its treatment of Dr. Agarwal's opinion and remand to the agency for further consideration.