**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**

File Name: 18a0598n.06

**Case No. 18-3371**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

**FILED**
Nov 29, 2018
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| SUSAN L. KESTEL, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE SOUTHERN |
| COMMISSIONER OF SOCIAL SECURITY, | ) | DISTRICT OF OHIO WESTERN |
| | ) | DIVISION |
| Defendant-Appellee. | ) | |

O P I N I O N

BEFORE:     COLE, Chief Judge; GRIFFIN and KETHLEDGE, Circuit Judges.

COLE, Chief Judge.  Plaintiff-Appellant Susan L. Kestel seeks review of a district court's decision affirming the decision of an administrative law judge ("ALJ") who denied her request for social security disability benefits.  Because substantial evidence supports the ALJ's decision, we affirm.

**I.  BACKGROUND**

**A.  Factual Background**

Kestel filed applications for Title XVI Supplemental Security Disability Benefits and Title II Social Security Disability Benefits on October 31, 2012, and November 2, 2012, respectively. In both applications, Kestel alleged disability beginning June 7, 2010, due to depression, diabetes, arthritis, hypertension, and a heart murmur.  After the state agency denied Kestel's applications

initially and on reconsideration, she requested a hearing with an ALJ. At the time of the hearing, she was forty-nine years old.

### B. Procedural History

#### 1. Administrative Hearing

An administrative hearing was held in April 2015. At the hearing, Kestel testified that she had only completed the eighth grade, but later earned her GED. She also testified that the main reason she believed she could not work was due to her anxiety. More specifically, Kestel believes she became completely disabled after her mother's death on June 7, 2010, at which time she described having "a breakdown":

> I just – everyday, I just – I'm fearful, and I don't exactly know why. I just feel – I'm just nervous and fearful throughout the day. And then depression on some days. Some days the depression is worse than the anxiety, and sometimes the opposite. Sometimes I have a mixture of both. Depression – neither – like depression is no fun at all, because all I want to do is just lay around and I don't care about anything, but then the anxiety – when that happens, that is just so stressful, and it takes a tole [sic] on me, like physically even. But just being fearful all the time.

(Hr'g Tr., R. 7-2, PageID 111.) Kestel also described feelings of anger.

In terms of physical impairments, Kestel testified that she experiences chronic pain all over her body; she "tore all four of [her] ACLs out in [her] right knee"; she suffers from arthritis in her right knee; her left knee has a torn meniscus; and she has diabetes and hypothyroidism. When asked how she spends her day, she responded "not much of anything." (*Id.* at PageID 119.) She elaborated that she lies down a lot, stretches, walks around, and takes a three-hour nap every day. Although she lives with a friend, Kestel testified that she does all the household chores, does her own laundry, and goes to the grocery store about once a month. Kestel also testified that she has a driver's license but drives infrequently.

At the time of her mother's death, Kestel was not working.  Prior to her mother's death, though, Kestel worked as a desk clerk at a motel, a gas station clerk, a typing assistant at a title company, and a realtor's assistant.  Following Kestel's testimony, the ALJ asked vocational expert Linda Tolley ("the VE") two hypotheticals regarding Kestel's ability to work.  First, the ALJ asked the VE to assume a hypothetical individual with the same age, education, and vocational background as Kestel, who was limited to light work with the following additional limitations:  she can never climb ladders, ropes, or scaffolds; she can frequently climb ramps and stairs; can frequently stoop, kneel, crouch, and crawl; must avoid concentrated exposure to pulmonary irritants; and must avoid moderate exposure to hazards.  The VE testified that even with those limitations, the hypothetical individual could perform all of Kestel's previous work, minus the typing assistant.

In the second hypothetical, the ALJ asked the VE about a hypothetical individual with the same limitations he had just described, but with added mental limitations:

> The individual is capable of performing simple, repetitive one and two-step job tasks in a slow to moderate paced environment without fast-paced-production-deadline constraints.  She is capable of infrequent brief and superficial contact with coworkers, supervisors and the general public.  And she can adapt to a static work environment, with clear, consistent performance expectations where changes are fully explained.

(*Id.* at PageID 131.)  The VE testified that with the incorporation of the mental limitations, all past work would be eliminated.  But the VE explained that sufficient jobs still existed in the national and state economy for the hypothetical individual to perform, such as a garment folder, a swatch clerk, and a "bagger garment" worker.

### 2.  *The ALJ's Decision*

In his decision, the ALJ found that Kestel met the insured status requirements of the Social Security Act through December 21, 2015, and had not engaged in substantial gainful activity since

June 7, 2010, her alleged onset date. Further, the ALJ found that Kestel suffered from the following severe impairments: diabetes mellitus, spine disorder, dysfunction of major joints, left carpal tunnel syndrome, and chronic obstructive pulmonary disease. The ALJ also opined that although Kestel suffered from affective disorder and anxiety disorder, those impairments did not cause more than minimal limitations in her ability to perform basic mental work activities, and therefore were non-severe. More specifically, the ALJ held that Kestel's mental impairments caused no limitations in her activities of daily living, mild limitations in her social functioning, and mild limitations in her "concentration, persistence, or pace." (ALJ Op., R. 7-2, PageID 78.)

Despite Kestel's impairments, the ALJ opined that she did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. The ALJ then concluded that Kestel's physical impairments limited her to a residual functional capacity ("RFC") of light work, with various physical limitations but, notably, no mental limitations. Finally, the ALJ found, based on the VE's testimony, that Kestel could perform her past relevant work as an administrative assistant, front desk clerk, and cashier.

### 3. *The District Court's Decision*

Pursuant to 42 U.S.C. §§ 405(g) and 1383(c), Kestel timely filed a civil action in the United States District Court for the Southern District of Ohio for review of the ALJ's decision. The magistrate judge found that there was substantial evidence for the ALJ's decision and recommended affirming. The district court agreed and adopted the magistrate judge's report and recommendation.

Kestel timely appealed.

## II. ANALYSIS

### A. Standard of Review

Under 42 U.S.C. § 405(g), our review of the Commissioner's decision is limited to determining whether the factual findings of the ALJ are supported by substantial evidence and whether the correct legal standards were applied. *See Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (per curiam). Substantial evidence means "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* We may not try the case de novo, resolve conflicts in evidence, or decide questions of credibility. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). If supported by substantial evidence and decided under the correct legal standard, the Commissioner's decision must be affirmed even if this Court would decide the matter differently, and even if substantial evidence also supports the claimant's position. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc).

### B. Legal Framework for Evaluating Disability Claims

"The plaintiff has the ultimate burden to establish an entitlement to benefits by proving the existence of a disability . . . ." *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 652 (6th Cir. 2009) (citing 42 U.S.C. § 423(d)(1)(A)).

To make a determination as to disability, an ALJ undertakes a five-step sequential evaluation mandated by regulation. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir.

2004). First, the claimant must demonstrate that she has not engaged in substantial gainful activity during the claimed period of disability. 20 C.F.R. § 404.1520(a)(4)(i). Second, the claimant must show that she suffers from a severe medically determinable physical or mental impairment. § 404.1520(a)(4)(ii). Third, if the claimant shows that her impairment meets or medically equals one of the impairments listed in 20 C.F.R. pt. 404, Subpt. P, App. 1, she is deemed disabled. § 404.1520(a)(4)(iii). If not, the ALJ moves to the fourth step to determine whether, based on the claimant's residual RFC, the claimant can perform her past relevant work, in which case the claimant is not disabled. § 404.1520(a)(4)(iv). If the claimant cannot perform past relevant work, the fifth step requires the ALJ to determine whether the claimant can make an adjustment to other work, in which case the claimant is not disabled. § 404.1520(a)(4)(v). "The claimant bears the burden of proof during the first four steps, but the burden shifts to the Commissioner at step five." *Wilson*, 378 F.3d at 548 (citing *Walters*, 127 F.3d at 529).

Kestel argues that the ALJ erred in two ways. First, Kestel argues that the ALJ incorrectly found that her alleged mental impairments were "non-severe" at step two of the disability analysis. As a result, she next argues that the ALJ's RFC at step four erroneously omitted any mental impairments, and thus is unsupported by substantial evidence. We conclude, however, that the record shows otherwise.

### C. Severity of Kestel's Mental Impairments

At step two, the ALJ considers the severity of a claimant's impairments. 20 C.F.R. § 404.1520(a)(4)(ii). An impairment is not considered severe if it does not "significantly limit [one's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 404.1522(a). As mentioned, a claimant bears the burden of demonstrating that she suffers from a medically determinable impairment. *See Wilson*, 378 F.3d at 548.

This court construes step two as a *de minimis* hurdle, *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 243 n.2 (6th Cir. 2007), intended to "screen out totally groundless claims." *Nejat v. Comm'r of Soc. Sec.*, 359 F. App'x 574, 576 (6th Cir. 2009) (quoting *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 89 (6th Cir. 1985)). But when an ALJ determines that one (or more) of a claimant's impairments is severe, the ALJ then proceeds to consider the "limitations and restrictions imposed by *all* of an individual's impairments, even those that are not 'severe.'" *Fisk v. Astrue*, 253 F. App'x 580, 583 (6th Cir. 2007) (emphasis added) (quoting Soc. Sec. Rul. 96–8p, 1996 WL 374184, at *5). Thus, because an ALJ considers all of a claimant's impairments in the remaining steps of the disability determination, any perceived failure to "find additional severe impairments at step two '[does] not constitute reversible error.'" *Id.* (quoting *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987)).

Here, although the ALJ classified Kestel's affective disorder and anxiety disorder as non-severe, he concluded that Kestel had a variety of other impairments that qualified as severe. As we have held before, *Maziarz* controls our analysis in these circumstances:

> In *Maziarz*, the agency determined that the claimant suffered from several severe impairments but that his cervical condition was not severe. Because the agency continued with the remaining steps in the disability determination and because the agency "properly could consider claimant's cervical condition in determining whether claimant retained sufficient residual functional capacity to allow him to perform substantial gainful activity," the court held that any error at step two was harmless and that it was therefore "unnecessary to decide" whether the agency erred in failing to find that the claimant's cervical condition constituted a severe impairment.

*Fisk*, 253 F. App'x at 583 (internal citations omitted).

As was the case in *Maziarz*, despite classifying Kestel's affective and anxiety disorders as non-severe, the ALJ determined that Kestel suffered from various other severe impairments. And in the remaining steps of the disability determination, the ALJ considered Kestel's "claims of allegedly disabling mental health symptoms," but found that Kestel's noncompliance with and

lack of mental health treatment suggested that "her mental health symptoms may not have been as limiting" as alleged. (ALJ Op., R. 7-1, PageID 83.) Because the ALJ considered these impairments in the remaining disability analysis, we find it unnecessary to decide whether the ALJ erred in classifying Kestel's mental impairments as non-severe at step two. *Fisk*, 253 F. App'x at 584 (citing *Maziarz*, 837 F.3d at 244); *see also Nejat*, 359 F. App'x at 577 ("[E]ven if the ALJ erred at step two, the ALJ's consideration of the cumulative effect of [the claimant's] impairments (both severe and non-severe) throughout the remaining steps of the analysis rendered any error harmless."); *Kirkland v. Comm'r of Soc. Sec.*, 528 F. App'x 425, 427 (6th Cir. 2013) ("[S]o long as the ALJ considers all of the individual's impairments, the failure to find additional severe impairments . . . does not constitute reversible error.") (internal quotation marks and citations omitted); *Hedges v. Comm'r of Soc. Sec.*, 725 F. App'x 394, 395 (6th Cir. 2018) (per curiam) (holding that once the ALJ had found at least one severe impairment and considered the limiting effects of all impairments, "whether the ALJ characterized [the claimant's] mental-health impairments as severe or non-severe at step two [was] legally irrelevant and [did] not amount to error") (internal quotation marks omitted).

Thus, to the extent the ALJ's failure to consider Kestel's mental impairments was erroneous, any error was harmless due to the ALJ's consideration of her mental impairments in the remaining steps of the disability analysis. *See Williams v. Comm'r of Soc. Sec.*, No. 16-1459, 2017 WL 4541355, at *3 (6th Cir. Mar. 1, 2017) (order) (citing *Kepke v. Comm'r of Soc. Sec.*, 636 F. App'x 625, 634 (6th Cir. 2016)).

### D. Residual Functional Capacity

Kestel next argues that the ALJ erred at step four of the disability analysis. Kestel alleges that "[t]he record contains multiple opinions from mental health specialists hired by Social

Security that uniformly agree that [she] suffers from mental health limitations." (Appellant Br. 31.) According to Kestel, despite this evidence, "[n]one of those limitations were incorporated in the hypothetical question posed to the vocational expert and none of those limitations were incorporated into the residual functional capacity," meaning the RFC was not supported by substantial evidence. (*Id.*) But Kestel is mistaken. "The residual functional capacity determination is expressly reserved for the Commissioner." *Ford v. Comm'r of Soc. Sec.*, 114 F. App'x 194, 198 (6th Cir. 2004) (citing 20 C.F.R. §§ 404.1527(e)(2), 404.1546). And it is clear that the ALJ considered all of the proposed mental health limitations, and the record as a whole, in opining on Kestel's RFC.

As an initial matter, the ALJ noted that Kestel consistently did not show up for or cancelled appointments with mental health professionals; she was discharged from treatment on two occasions due to noncompliance; and she did not undergo a psychological assessment until 2012, more than two years after she experienced her mental "breakdown." We recognize, as we have before, "that ALJs must be careful not to assume that a [claimant's] failure to receive mental-health treatment evidences a tranquil mental state[,]" for the claimant's failure to seek treatment may be another symptom of a disorder itself. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 283 (6th Cir. 2009). But in this case there is no evidence that explains Kestel's lack of treatment for over two years, and she offered inconsistent explanations regarding her missed appointments. *See id.* at 283–84. Thus, the ALJ's consideration of Kestel's inconsistent treatment and noncompliance provided substantial evidence for the conclusion that Kestel's mental health symptoms may not have been as limiting as alleged, and we will not substitute our judgment for that of the ALJ.

Further, the ALJ explained the weight granted to the opinions of each mental health specialist and the reasons why he discounted certain conclusions. For example, state agency

psychological consultants Drs. Karla Voyten and Todd Finnerty found Kestel did not satisfy the diagnostic criteria to meet a listing, but opined that she was limited in her ability to interact appropriately with the general public and carry out detailed instructions. The ALJ recognized that these opinions "were rendered by expert medical professionals who had the opportunity to review the evidence of record," but found that Kestel's actual functioning, as revealed in her function report and the rest of the medical record, "demonstrate that her mental impairments are considerably less limiting than she alleged." (ALJ Op., R. 7-2, PageID 85.) Specifically, Kestel reported in her function report that she drives and prepares her own meals; she testified at her hearing that she performs various household chores and lives with a roommate; and she reported during a psychological exam that she gets along well with neighbors, store clerks, and public officials in the community.

Another psychologist, Dr. Martin Johnson, found that Kestel's self-reporting was 75% reliable and her symptoms were consistent with depression or an anxiety related disorder. In his functional assessment, he found that Kestel was expected to be able to understand and apply instructions in the work setting consistent with the intellectual functioning of same aged peers; could maintain adequate attention and concentration in work demand settings; was likely to experience some relational difficulties with coworkers and employers in work demand settings; and was likely to experience some challenges responding appropriately to workplace pressures related to her ability to work as a team and maintain positive relationships with co-workers and management. The ALJ assigned Dr. Johnson's opinion some weight, reasoning that he was a mental health specialist who had the opportunity to examine Kestel. However, the ALJ found that the evidence did not support Dr. Johnson's findings on Kestel's social limitations, as Kestel testified that she lives with a friend and she reported no difficulty getting along with family,

friends, or neighbors in her function report. Additionally, review of the record makes clear that Kestel has never been terminated from a job due to angry outbursts.

The ALJ also assigned little weight to the opinion of Dr. H. Owen Ward, a clinical psychologist who treated Kestel during seven therapy sessions beginning in January 2015. Dr. Ward opined—in a letter to Kestel's attorney—as follows:

> I have diagnosed her with 309.81 Posttraumatic Stress Disorder and 296.89 Bipolar II. It is my opinion that she is unable to work in any capacity in full or part-time employment and that her rehabilitation will take more than a year to complete. I also think it is likely that she will never be able to work again.

(R. 7-10, PageID 1341.) The ALJ recognized that although Dr. Ward is a specialist who is familiar with Kestel, his treatment notes do not support his extreme opinion that she will never be able to work again. And the ALJ (correctly) noted that Ward's treatment notes "reveal very little" about Kestel's condition and he failed to support his opinion with any specific findings. Moreover, we note that final responsibility for deciding a claimant's ability to work is an issue reserved to the commissioner, and thus Dr. Ward's opinion regarding Kestel's perceived inability to work is not entitled to any controlling weight. *See Dutkiewicz v. Comm'r of Soc. Sec.*, 663 F. App'x 430, 432 (6th Cir. 2016) (per curiam), *cert. denied sub nom. Dutkiewicz v. Berryhill*, 137 S. Ct. 1365 (2017) (citing 20 C.F.R. § 404.1527(d)(1), (3); *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007)).

Finally, Kestel references a March 2014 letter from her primary care physician, Dr. Hemapriya Kumar, as further support for a more restrictive RFC. But the letter, as the ALJ recognized, is "vague" and unclear: "Because of the multiple commodities she may to be [sic] able to gain full time employment." (R. 7-8, PageID 1108.) Even if we were to assume that Dr. Kumar meant to opine that Kestel *may not* be able to obtain full time employment, the ALJ assigned little weight to this opinion because Dr. Kumar cited no findings of support. *See* 20 C.F.R. § 404.1527(c)(3) ("The more a medical source presents relevant evidence to support a

medical opinion, particularly medical signs and laboratory findings, the more weight we will give that medical opinion. The better an explanation a source provides for a medical opinion, the more weight we will give that medical opinion.")

Having reviewed the ALJ's analysis and explanations under step four, and although the record includes evidence that could support a different conclusion, we nevertheless conclude that the ALJ provided sufficient explanations, supported with facts from the record, for his decision. *Walters*, 127 F.3d at 532 ("The administrative record contains substantial evidence to support the Commissioner's conclusion that [the claimant] had the residual functional capacity to perform his past relevant work . . . . That there may be substantial evidence in the record to support another conclusion is irrelevant."). Thus, Kestel's RFC was supported by substantial evidence.

### III. CONCLUSION

For the foregoing reasons, we affirm the judgment of the district court.